In the Matter of BUSCH JEWELRY Co., INC., and Others, Petitioners, against GEORGE SILVERS and Others, Respondents.

Supreme Court, Special Term, New York County, October 31, 1938.

*Scandrett, Tuttle & Chalaire* [*Bernard Phillips* of counsel], for the plaintiffs.

*Harry Sacher* [*Samuel Null* of counsel], for the defendants.

COTILLO, J. You eleven defendants before me stand convicted by an American jury of your own selection of a criminal contempt in that you have been charged with violating an injunction issued out of this court on June 28, 1938 (*Busch Jewelry Co., Inc.,* v. *United Retail, etc., Union,* 168 Misc. 224). This is a special proceeding, its interpretation being made under sections 876-a and 882-a of the Civil Practice Act. Interpretation of the former section prescribes that an injunction may be granted in a labor dispute by a court having jurisdiction if there are involved elements of fraud, violence and breach of the peace. The latter section declares it to be essential that before any sentence of judgment is imposed upon any one accused of such misconduct, he first be tried by a jury of his peers.

The injunction which this jury has found that you defendants have violated arose in a case between the Busch Jewelry Company, as plaintiffs, against Locals 830 and 208, which are labor locals affiliated with C. I. O. The facts which were brought out at that trial showed a course of conduct desperately conceived and stubbornly enacted to the end that the adjudication of this court was that it could not be permitted to continue, else further irreparable damage would be done to these plaintiffs.

Among other things it was brought out that since the commencement of the strike against the Busch Company on May 17, 1938, the defendants' conduct therein had been characterized by such

flagrant, unlawful and illegal activities as would be difficult to believe were it not so convincingly proved. Intimidation, coercion, molestation and annoyance of employees of plaintiff remaining on their jobs — persons who exercised merely their inalienable legal right to remain at work — the use of violent, abusive language, epithets and threats directed not only at such employees but to the plaintiff's customers and to the public generally, mass picketing, demonstrations, continuous dissemination of deliberately false statements, the issuance of circulars confined solely to Harlem stores of plaintiff wherein maliciously false statements with respect to the company's attitude towards negroes were made and for the sole purpose of appealing to racial prejudice, the use of the United States mails in an effort to hold employees of the Busch Company in contempt in the eyes of their neighbors, loud and boisterous language causing crowds to collect, invasion of the privacy of the homes of plaintiff's customers for the purpose of inducing those persons by means of false statements to commit breaches of contract, picketing and repeated threats to picket the homes of employees and members of their families, the shouting of vicious statements such as " Busch's are making prostitutes of their women," " They sell only cracked diamonds," " They'll double-cross you," and finally an actual instance where a striking employee went to a customer, received money to be applied against the customer's account and converted such money to his own use and never accounted to the company. These were merely some of the acts complained of and likewise proved at the trial.

The defendants there through their official bulletins, published and distributed by both Locals 830 and 208, gloated over the illegal acts being committed by them, boasted of their defiance of police authority. One of their bulletins referred with pride to the fact that a crowd of over five hundred persons had gathered in front of one of Busch's stores and refused to disperse at the direction of the police and greeted the employees with a torrent of insulting language. Other bulletins encouraged the strikers to conduct mass picketing demonstrations, to shout as loudly as possible, to hinder customers from entering the stores in order to make payments, to engage in any antics, however illegal that might be, to draw crowds in front of the premises of the Busch stores.

It is, therefore, for a violation of that order which had been issued because of elements of fraud, irreparable damage, violence and breach of the peace, and which restrained all picketing before Busch's stores was issued.

Thereafter followed a course of conduct which amazed the citizenry of this community. I say this advisedly and in a spirit

devoid of any personal feeling with respect to the persons concerned here before me.

It was brought to this court's attention that the picketing prohibited by the injunction was continued thereafter, in fact the day following, barefacedly and with a reckless abandon of consequences that brooked ill for the respect of our courts and the system of justice under which we operate. Unfortunately, much of this misconduct admitted by you convicted pickets took place under and by the advice of counsel; thus what was done in the way of straight picketing was deliberately planned, consciously directed, and purposely conceived under the notion that the same was in no wise an affront to this court and indeed not even a violation of its decree.

Beyond straight picketing there occurred a series of other incredible happenings directly bearing upon the injunction itself. It was called to the court's attention that by means of skywriting and at numerous gatherings held at public beaches and by the wide household distribution of handbills criticizing the terms of this injunction, a contemptuous and sneering attitude was being introduced. Significantly lacking were all the usual qualities of respect and obedience ordinarily attributable to court decrees.

Going even beyond those particularities just described, there occurred additional acts, such as the holding of mass meetings to produce and inspire a feeling of rebelliousness against living up to the terms of the injunction. Not that this court feels public discussion of court decrees is to be prohibited, but the public press carried notices pointing directly at criticisms of this court's conduct in deciding in favor of the plaintiff and against the defendant locals. Paraphrasing, if not reporting precisely, the criticism attributed to the counsel for these defendants, which explains defendants' presence here now before me, was the statement that judicial defiance should be met by labor defiance. Both rebelliousness and affront to the dignity of this court and the respect normally due and owing our institutions are clearly what is at stake.

At such gatherings, instead of hearing substantial, dignified plans whereby the merits of the controversy could be made plain to the rank and file of labor, or instead of seeking to avoid repetition of illegal acts, the remarks printed relating to what happened after such injunction was issued, concerned the political career of this court and the actual words printed in the newspapers were that the court issuing the decree had written its political obituary and last will and testament. Such derogatory remarks bore less on the rights behind the actual dispute than that they personalized an issue in an improper and perhaps criminally libelous manner.

Fortunately, none of these rash statements, of historical value here only, were introduced in evidence, so that the jury's verdict was in no wise influenced by such an exhibition of petty, if not vicious, spleen. Nevertheless, the picture, including the tonal quality relating to the character of opposition which this court's order has met from these pickets, arose from the very first day of its emission from within this forum.

It is to be noted that on October 3, 1938, this court was presented with a question parallel in character, yet involving a doubt as to what expression had emanated from the court concerning the type of picketing permissible under the terms of this very order. The attorney for the defendants related his version, which failed to correspond with the actual statement issued by the court. As a gesture of liberality, however, the twelve pickets accused there, charged, as here, with having committed a criminal contempt, were given by this court the benefit of the doubt, and the action to punish because of such misconduct was denied. That petition was dismissed.

Subsequent to that, there occurred an even more flagrant manifestation of disrespect to our system of justice. In the case of *Busch Jewelry Co., Inc.*, v. *United Retail, etc., Union* (169 Misc. 156) four .pickets were adjudged guilty by a jury of having connived and schemed in an illegal manner to circumvent this very injunction which you stand accused of violating. There, again, the jury's findings were that the conduct complained against was a wanton and flagrant disobedience and, therefore, illegal.

In this instant case before me stand eleven pickets who confessed to illegal picketing, but who assert that the illegal conduct of which they now stand convicted was inspired by the opinion given them by their attorney that the picketing such as that in which they indulged was not prohibited or even improper.

Such a defense, whether a subterfuge or not, is immaterial here inasmuch as the jury has chosen not to believe that such advice, good or bad, is sufficient to exculpate you.

Thus there devolves upon me the duty of maintaining the appropriate balance between the various elements always involved in labor disputes, namely, the general public, labor, and the employer.

Justice should never be punitive, else it ceases to be justice. In these cases which involve labor disputes, we face the danger continuously of finding it impossible to treat or deal with fixed quantities. Labor problems involve people, personalities, human emotions, principles of conduct, and last but not least, human ideals.

My purpose is not to render a discourse on the happy results encountered in finding the secret key leading to harmonious intercourse between labor and capital. Conduct pictured by this testimony shows conclusively two things: One, that in this case there has appeared a course of conduct tantamount to a studied policy seeking to stultify normal and ordinary processes of law found within our law courts because of an undesirable or misunderstood decision; that such course of conduct ran all the way from the making and publishing of derogatory and inflammatory remarks to the finding of new and novel methods seeking to get around the injunction. The second item which is distinctive in this case is the notion that no court might dare to continue to resist the demands of such strikers lest there be visited upon the offender public criticism and threatened future political retribution.

As a matter of fact, it has always been the rule of this court that injunctions were orders implicitly obeyed and rigorously enforced. No subterfuge, no chicanery or circumvention was ever thought of, much less allowed. Of all court orders, the injunction order was in fact a hallowed order and it always has been treated with respect.

What has been observed here have been attempts appearing to break down the formalism behind the issuance and observance of such potent decrees as injunctions, and to treat them as if they could be easily ignored and were of flexible character. Not often has a court of equity been faced in a labor injunction violation with a plea of confession and avoidance, as appears here. You men have confessed to unlawful picketing but assert as a mask against punishment the defense of having acted under the opinion of counsel.

The law takes no cognizance of this defense and the jury found as a matter of fact that in this case it was not even an appropriate defense. To this court, therefore, arises the next phase, of determining what punishment, if any, should be properly levied because of such violations.

In your persistent attitude to flout the order of this court must be found the basis involving the lack of appreciation for judicial process and for the necessity of the existence of courts of justice as well as respect for the judicial decisions arrived at after fair and impartial trials.

Under the facts found by the jury, it was as if you pickets entertained the notion that labor might properly be the recipient of class legislation and that it was entitled to special class treatment; that labor exists as a group separate and apart from the other component elements which make up our society today.

Thinking along similar lines, there are also to be found those labor leaders who impliedly contend that judicial careers could be easily destroyed unless complacent decisions follow.

Fortunately, on this point, if there is any merit on your side in the controversy here before me, it is an American jury composed of men and women from the rank and file of the citizens of this great metropolitan city who have found you guilty and who have said that your conduct constitutes a contempt and has been stubbornly illegal.

Therefore, the general cause of labor in this case has been weighed just as your specific conduct has been weighed and been found wanting. Your acts have been declared improper and the counsel you have received from your irresponsible leadership, from your attorney or business agent or both, declared to be unavailing. You are the sufferers. Your irresponsible leaders who have made this decision for you do not suffer. The brunt of punishment is always borne by the rank and file of labor.

It is significant in this connection to note this additional fact, that section 882-a is now for the first time interpreted by a jury in a case involving the outlawry of permanent picketing. This case typifies an average test of that section's workability. In enacting such a provision making compulsory a jury trial, it was deemed that by means thereof labor would be insured a fair trial and *pari passu* that the decisions arrived at thereunder would be beyond cavil. That has now occurred. By your own admissions you stand convicted of illegal picketing under a form and by virtue of a procedure created by labor's own choosing. Far better would it have been had you voluntarily acquiesced in or chosen the orthodox manner provided by law, namely, by appeal, to test the legality of the injunction which has been violated. You chose the wrong way and you now have been convicted of being a malefactor in and by a forum of your own choosing.

I am constrained to feel that there has been practiced here a course of conduct which leaves me little choice. I say this because I stand in the position of protecting a third party involved in this dispute, namely, the public, whose interests are equally involved together with Busch and you eleven men and women convicted as pickets. The character of the picketing indulged in and its nature and extent, together with the character of the defense interposed, cause me to feel that I would be derelict in my duty were I again, as I did in October, to excuse your offenses. You stand in the category of persons who, knowing of the existence of an injunction, deliberately chose to violate same. The choice you made was not only deliberate but persistent. It was not slight

or trivial but substantial and consequential. I say this because though under a duty not to do those things which would offend under the terms of the order, you chose instead to act with temerity and recklessness both. By no other adjectives less strong can your misconduct truthfully be portrayed. Any lesser description would place a premium on a gross abuse of respect and order.

Two of you, besides carrying banners and signs, add to your offense that of shouting, general boisterousness, and the making of inflammatory remarks. I refer to George Silvers, president of Local 830, and to Lester Avnet, business agent of Local 830. Both of you were found picketing in front of the Busch stores located at 253 West Thirty-fourth street on June twenty-ninth, after knowledge of the injunction. This the jury has so found. During the course of the picketing you were not satisfied merely with picketing but you were shouting: "We don't care what the court does, we have the right to picket regardless of court orders."

Introduced into evidence is a picture showing service of a copy of the order, and it has been testified that upon such service so made, Lester Avnet remarked that he would continue to picket, and that he did not care what the injunction provided for.

I find that both of you have deliberately misled and misguided the people who relied upon your advice. You are the persons who should be made an example of, because it is due to your misconduct that the court faces this present situation. I find a flagrant disregard of both law and order, and for that reason I sentence each of you to a term of thirty days in the county jail and in addition a fine of $250 each.

The court faces a different situation with respect to the other nine pickets. I find that you men and women are members of Local 830. I find that you have a direct stake in this present controversy. You are in a somewhat different position than the pickets who were found picketing in the Local 144 dispute. There the men convicted were professional pickets such as you are not. They were paid to picket whereas you were interested in protecting your jobs and in bettering your labor status. In the pickets that appeared before me in that particular dispute, the jury finding there was that there did not exist a valid labor dispute. The jury found there a faked labor quarrel and said that the course of their conduct for which they were convicted was in aiding and abetting others to violate the law. I find extenuating circumstances in this set of facts which did not exist in that previous case. Your conduct I feel is due in great part to the bad advice and poor judgment given

you by your business leaders and your attorney; that excepting for such advice, you would not be in your present predicament.

I, of course, reiterate that there exists no legal excuse that might condone your picketing. The terms of the injunction order were explicit. Nevertheless, and despite the fact that there is no justification for your conduct, as found in our courts of law, I deem it the last straw that I could grasp, if I am to show mercy, to recognize that your offense was created by the unsound advice given you. It is a fact that in just such cases as this, the exercise of mercy is justified. I, therefore, am going to take into consideration all the circumstances that exist in this case and by reason of such circumstances, I sentence you, William Weeks, Matthew Baker, Jean Besen, Gloria Silverstein, Seymour Antler, Alvin Blum, Louis Lee, Sol Goldstein and Marian Lapin, to ten days each in the city prison, but suspend the execution of the sentences pending your good behavior; and impose no fine, but place you on probation for a period of six months. Under this sentence your future conduct will determine what future act, if any, is to be done by this court.